Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6641 | **DATE** | 8/20/2002 |
| **CASE TITLE** | Solaia Technology vs. Jefferson Smurfit | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, Rockwell's motion to reconsider the Magistrate Judge's 7/11/02 order [170-1] is granted in part and denied in part. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 22 2002 | |
| | Notified counsel by telephone. | | date docketed | 209 |
| | Docketing to mail notices. | | G.J. docketing deputy initials | |
| | Mail AO 450 form. | | | |
| ✓ | Copy to judge/magistrate judge. | | 8/20/2002 date mailed notice | |
| KF | courtroom deputy's initials | Date/time received in central Clerk's Office | KF mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOLAIA TECHNOLOGY LLC,<br><br>　　Plaintiff,<br><br>　　v.<br><br>JEFFERSON SMURFIT CORPORATION,<br>THE CLOROX COMPANY, INC., and<br>BMW MANUFACTURING CORPORATION,<br><br>　　Defendants<br><br>And<br><br>THE CLOROX COMPANY, INC. and<br>JEFFERSON-SMURFIT CORPORATION,<br><br>　　Third-Party Plaintiffs,<br><br>　　v.<br><br>ROCKWELL SOFTWARE, INC. and<br>ALLEN BRADLEY COMPANY, LLC,<br><br>　　Third-Party Defendants. | No. 01 C 6641<br><br>Judge James F. Holderman<br>Mag. Judge Mason |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

On July 11, 2002, this Court entered an order designating a patent assignment agreement ("Agreement") between plaintiff Solaia Technology, LLC ("Solaia") and Schneider Automation, Inc. and Square D Company (collectively, "Schneider") as "outside counsel only", and redacting a customer list appended to the Agreement. Since that time, various defendants in the case have moved to dismiss the complaint, arguing that Solaia is not the real party in interest, since through the Agreement, Schneider and some of its



customers retain certain rights and privileges related to the patent. Based on these motions, third party defendant Rockwell Software, Inc. ("Rockwell") has moved for reconsideration of our previous order regarding the Agreement's confidentiality. After considering the parties' new briefs, as well as answers to certain questions we posed to the parties in open court, we modify our previous order, as explained below.

There are two separate issues relating to the Agreement. First is the question of whether the list of Schneider's customers attached to the Agreement should continue to be redacted, and not disclosed to any party. Rockwell argues that the customer list is critical to the question of whether Schneider is the real party in interest in this case because it shows the scope of rights that Schneider retains with respect to its customers even after assigning the patent to Solaia. Rockwell's argument for disclosing the names to outside counsel is that being able to determine what share of the market a particular customer has will enable Rockwell and the other defendants to specifically show that Schneider retains significant rights related to the patent, and thus should be sued as a real-party-in-interest.

In court, Schneider's counsel indicated that it had no objection to Rockwell's being able to argue that the customer list contained 136 names, and that some of them were Fortune 100 or Fortune 500 companies.[1] We do not see any reason to modify our original decision that the specific identity of Schneider's customers should not be disclosed and thus uphold that portion of the order.

A bigger question concerns the Agreement itself. Rockwell argues that Schneider

---

[1] Indeed, counsel for Schneider submitted a magazine article discussing the lawsuit to the Court, in which the number of Schneider customers on the list was revealed.

2

has not provided any concrete reason why disclosure of the Agreement to Rockwell's in-house counsel (as opposed to outside counsel only) could hurt Schneider's competitive advantage. Rockwell argues that it and the other defendants are unable to involve their in-house counsel in strategic decisions regarding the motions to dismiss since in-house counsel is barred from seeing the terms of the Agreement. It also argues that there is no legitimate reason to keep the terms of the Agreement away from the public.

The only case relevant to this issue was cited by defendant Jefferson Smurfit ("Smurfit"), which filed a reply in support of Rockwell's motion. In *Baxter International, Inc. v. Abbott Laboratories*, No. 02-2039, 2002 WL 1543385 (7th Cir., July 16, 2002), the Seventh Circuit ordered that certain documents, including a licensing agreement, had to be disclosed to the public on appeal despite the parties' previous agreement to keep them confidential. The Court noted that information transmitted to the Court of Appeals was presumably public because the appellate record is "normally vital to the case's outcome." *Id.* at *1. Further, the Court held that in civil cases, only bona fide trade secrets, attorney-client material, and information required to be confidential by statute should remain confidential on appeal. Parties may wish to keep many pieces of information (such as salaries or the price paid under a contract) confidential, but when the information is critical to a legal claim, they must be disclosed. *Id.* at *2.

The *Baxter* Court found that the parties' general assertion that the license agreement should be kept confidential because its disclosure "could" hurt Abbott's competitive advantage was not enough to support a continuation of the protective order. Similarly, Rockwell argues that Schneider has failed to explain exactly why disclosure of the Agreement could harm it competitively. We had the parties return to Court so that we

3

could question Schneider regarding the competitive harm it might suffer if the Agreement is disclosed.

As an initial matter, we should note that the facts before us are different than those in *Baxter* because we are not considering the public disclosure of the Agreement. Instead, Rockwell merely seeks to be able to share the Agreement and its terms with its in-house counsel and business decision makers. Schneider does not object to the disclosure per se, but instead argues that allowing additional copies of the Agreement to be passed around to inside counsel for Rockwell (who is admittedly one of Schneider's biggest competitors), increases the chance that the Agreement could be stolen or used by unauthorized individuals, and for non-litigation purposes.[2]

After reviewing the parties' arguments and considering the *Baxter* case, we believe that at this time, it is appropriate to modify our previous order to allow Rockwell's in-house counsel (but not its other business decision makers) to be able to see the terms of the Agreement and discuss them with Rockwell's outside counsel, pursuant to the terms of the protective order. However, no copies of the Agreement (or any part of the Agreement) should be given to Rockwell's in-house counsel or kept at Rockwell's offices. Further, Rockwell's in-house counsel may only have access to the Agreement in the presence of its outside counsel, as necessary to discuss litigation strategy for this case.

We modify our original opinion for several reasons. Although Schneider's counsel explained that dissemination of the Agreement could harm it competitively by causing its

---

[2] There is a protective agreement in place in this case that limits the use and dissemination of certain documents. Schneider argues that in-house counsel of Rockwell should not be allowed to review the Agreement pursuant to the protective order because of its concern that copies of the Agreement will be improperly disseminated.

4

customers to question and worry about their rights and protections under the Agreement,[3] such harm would only occur if the Agreement were taken by a competitor and used for an improper purpose. We are not ordering (as Rockwell alternatively suggests), that the Agreement be disclosed to the public at this time. This case is not at the appeals stage, and the Agreement's relevance to the various legal issues is still at issue. Since we agree that Rockwell's in-house counsel needs access to the Agreement to be able to communicate effectively with its outside counsel, and since we have seen no evidence that such in-house counsel is not capable of abiding by the protective order, we will allow them to see the Agreement.

For the above reasons, we modify our order of July 11, 2002 as stated herein. It is so ordered.

ENTER:

MICHAEL T. MASON
United States Magistrate Judge

Dated: August 20, 2002

---

[3] As explained in the magazine article submitted by Schneider's counsel, Solaia is currently suing various manufacturers, alleging that they are infringing on Solaia's patent (acquired from Schneider), without paying any sort of licensing fee. The Agreement apparently provides some protection from suit for certain of Schneider's customers, and the article raises the question of whether Solaia might focus its attention on some of these customers (or others), and sue them for infringement as well. We could imagine a scenario under which a Schneider competitor obtains a copy of the Agreement and uses it to threaten Schneider customers with the idea that they are not properly protected from suit under the Agreement. See Peggy Smedley & John Buell, *Clorox Settles . . . Others are Sued*, Start Magazine, August, 2002 at 38.

5